**DENTAL CARE ASSOCIATES, INC., Appellant**

v.

**KELLER ENGINEERS, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2008.

Filed July 2, 2008.

Reargument Denied Sept. 3, 2008.

Bret Keisling, Harrisburg, for appellant.

Maura Z. McGuire, Easton, for appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE, and POPOVICH, JJ.

OPINION BY POPOVICH, J.

¶ 1 Appellant Dental Care Associates, Inc. appeals the order denying its "Petition to Strike/Open Judgment of Non Pros" due to its failure to file a certificate of merit. We affirm.

¶ 2 The facts and procedural history of this case, as gleaned from the certified record filed with this Court, are as follows. On the 15th day of December, 1999, Appellee agreed to provide professional engineering services associated with the construction of new dental and commercial offices on Appellant's property located in Williamsport, Pennsylvania. In furtherance of the agreement, Appellee drafted a site plan for the property, which included a storm water management system. After construction, problems arose with regard

to Appellee's storm water management design.

¶3 Appellee agreed to submit a proposed redesign of the storm water management system, which after submission was quoted by a contractor (Hawbaker) to complete at $26,500.00. However, when Hawbaker revised its bid to $39,005.75, Appellee refused to pay the higher cost unless an independent engineering report was prepared justifying the increase. Appellant complied and secured the services of Brinjac Engineering, who made recommendations for the redesign plus a contractor to do the work at a price of $35,488.00. Appellee rejected participation in the increased cost, but stood steadfast upon its original offer to pay $26,500.00 to remedy the matter.

¶4 On the 9th day of March, 2006, Appellant responded by filing a two-count complaint sounding in negligence and unjust enrichment, the former of which alleged Appellee breached a duty owed to Appellant "to use the degree of knowledge, skill, and judgment ordinarily possessed and used by the average engineer in the profession." Appellant's Complaint, 3/9/06, at ¶41. Subsequent thereto, Appellant filed two amended complaints, which were responded to by Appellee's denial that any storm water damage was due to any errors or deficiencies with its design. In particular, Appellee alleged that any problems with the storm water management system were caused by deviations from its design and other circum-

stances beyond its control. *See* Appellee's Answer to Second Amended Complaint with New Matter, 8/25/06, at ¶¶12, 13. Further, Appellee asserted that all services performed were provided "according to the appropriate standard of care and conformed to recognized standards and practices, as well as federal, state and local codes, ordinances, and regulations." *Id.* at ¶64.

¶5 On November 3, 2006, Appellee filed a praecipe with the prothonotary for entry of a judgment of *non pros* pursuant to Pa.R.C.P. 1042.6,[1] which was granted the same day it was requested. Within seven days, Appellant responded with a "Petition to Strike/Open Judgment of Non Pros," which was denied by the trial court. A timely notice of appeal was followed by a Pa.R.A.P.1925(b) statement asserting that Appellant was not required to file a certificate of merit because: 1) the allegations of negligence against Appellee were in the nature of ordinary negligence; 2) Appellee held no professional license; and 3) the facts of the case and applicable law were supportive of Appellant's position. *See* Appellant's brief, at 9.

¶6 When reviewing the denial of a petition to strike and/or open a judgment of *non pros*, we will reverse the trial court only if we find a manifest abuse of discretion. *Hoover v. Davila,* 862 A.2d 591, 593 (Pa.Super.2004). Herein, inasmuch as Appellant does not aver that the judgment of *non pros* should be stricken,[2] we will focus

1. By order of June 16, 2008, our Supreme Court amended the Rules of Civil Procedure regarding professional liability actions to be effective immediately. *See In re: Adoption of Rule of Civil Procedure 1042.6 and Amendment of Ruler 1042.1 et seq. Governing Professional Liability Actions,* No. 493 Civil Procedure Rules Docket No. 5. The Supreme Court stated that the new and amended rules would apply to pending actions in which a judgment of *non pros* had not been entered prior the

order's effective date. *Id.* In this case, the prothonotary entered the judgment *non pros* prior to the rule change; for this reason, the new rules did not apply.

2. If such were the case, "It is well-established that a motion to strike off a judgment of *non pros* challenges only defects appearing on the face of the record and that such a motion may not be granted if the record is self-sustain-

our attention upon the rule governing whether a judgment of *non pros* should be opened, which indicates in relevant part:

> (b) If the relief sought includes the opening of the judgment, the petition shall allege facts showing that
>
> (1) the petition is timely filed,
>
> (2) there is a reasonable explanation or legitimate excuse for the inactivity or delay, and
>
> (3) there is a meritorious cause of action.

Pa.R.C.P. 3051(b).

¶ 7 Appellant asserts that its claim against Appellee is one of ordinary negligence and not for professional malpractice. Appellant attempts to give meaning to such an argument by noting:

> [A]t no time has Appellant alleged that Appellee violated any engineering standards or any engineering code. Pursuant to the facts averred, this case is a simple case in which the trier of fact will be asked to determine whether Appellee's design of the storm water management system had resulted in damages in Appellant's property. This is not a question which is "beyond the realm of common knowledge and experience." Appellant's Complaint simply alleges that the services provided by Appellee were insufficient to allow for the proper flow of storm water over the property at issue. This is a simple question that does not require expert testimony or explanation. A review of Appellant's expert report makes this fact clear.

Appellant's brief, at 12. We disagree.

■■■ ¶ 8 Our Pennsylvania Rules of Civil Procedure contain provisions pertaining to professional liability actions. Pa.

R.C.P. 1042.1–1042.8. Rule 1042.3 states, as herein relevant:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff [ . . . ] shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either:
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim. [ . . . ].

Pa.R.C.P. 1042.3(a)(1)-(3). This rule applies to professional liability claims against licensed professionals, which include engineers. Pa.R.C.P. 1042.1(b)(1)(vi). The rule contemplates that a certificate of merit will be filed contemporaneously with or shortly after the filing of the complaint, a 60–day window of opportunity exists after the filing of the complaint to accomplish the filing of the certificate of merit. *Yee v. Roberts,* 878 A.2d 906, 910 (Pa.Super.2005). Procedurally, when the rule applies and a plaintiff fails to file a certificate of merit,

ing." *Hershey v. Segro,* 252 Pa.Super. 240, 381 A.2d 478, 479 (1977).

the defendant is afforded the opportunity to praecipe the prothonotary to enter a judgment of *non pros.* Pa.R.C.P. 1042.6(a). This is what occurred here.

¶ 9 Albeit the certificate of merit rules provide for the identification of each defendant against whom the plaintiff is asserting a professional liability claim, and that each defendant is to be identified as "a licensed professional" in Pennsylvania, *see* Rule 1042.2 (note), we do not find that the absence of this recommended language from Appellant's complaint renders it any less a professional liability action. *See Varner v. Classic Communities Corp.*, 890 A.2d 1068 (Pa.Super.2006) (holding that plaintiffs' failure to name defendant/architectural firm "as a licensed professional" in complaint did not exempt them from filing certificate of merit when, in substance, they were actually asserting professional liability claim). In *Varner*, this Court stated:

> We decline to hold that if a plaintiff fails to include the language in their complaint "recommended" by the note following Pa.R.C.P. 1042.2(a), or fails to expressly indicate in its complaint that it is asserting a "professional liability claim," that the plaintiff is then considered exempted from providing a certificate of merit when, in substance, the plaintiff is actually asserting a professional liability claim. *We have held, albeit in the context of a medical malpractice case, that it is the substance of the complaint rather than its form which controls whether the claim against a professionally licensed defendant sounds in ordinary negligence or professional malpractice.* See *Grossman v. Barke*, 868 A.2d 561 (Pa.Super.2005), *appeal denied*, 585 Pa. 697, 889 A.2d 89 (2005).
>
> In *Grossman*, we examined the difference between a claim of ordinary negligence and one of professional medical malpractice in the context of determin-

ing whether expert medical testimony was necessary. We stated that the basic elements of both ordinary negligence and medical malpractice were the same (*i.e.*, existence of a duty, breach of that duty, causal connection between the conduct and resulting injury, and actual damages), but medical malpractice is the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services". *Id.* at 566 (*quoting Toogood v. Owen J. Rogal, D.D.S., P.C.*, 573 Pa. 245, 824 A.2d 1140, 1145 (2003)). We noted that one of the most distinguishing features of a medical professional malpractice suit was the need, in most cases, for expert testimony that would elucidate complex issues for a jury of laypersons. *Id.* However, we also recognized that even in a medical professional negligence suit, expert testimony may not be required where the negligence is obvious or within the realm of a layperson's understanding. *Id.* at 567.

> \* \* \* \*
>
> In the instant case, we have concluded that [Appellee] Barton qualifies as a "licensed professional" for purposes of the certificate of merit provisions.
>
> \* \* \* \*
>
> For the foregoing reasons, we conclude that the trial court did not err by denying [Appellants/]Plaintiffs' Petition to Strike/Open the judgment of *non pros* that had been entered against them for their failure to timely file a certificate of merit in support of their claim of professional architectural liability against [Appellee/Defendant/]Barton.

*Varner*, 890 A.2d at 1074, 1077.

¶ 10 *Sub judice*, consistent with the rationale in *Varner*, we hold that Appellee, a Pennsylvania corporation engaged in the

business of providing engineering services, qualifies as a "licensed professional" for purposes of the certificate of merit provisions under Rule 1042.1(b)(1)(vi). Concomitant therewith, we conclude that Appellant's causes of action against Appellee are inextricably intertwined with the propriety of assessing the professional engineering services Appellee provided in the storm water management plan and civil design of Appellant's property. This is evident from an examination of the report prepared by the consultant (Brinjac Engineering) hired by Appellant to review the design work performed by Appellee; to-wit:

> *BRINJAC has reviewed [Appellee's] Storm [W]ater Management Report for the property and found the report to be thorough in scope and of sound engineering methods.* There was a discrepancy noted on the pages entitled SCS segmental Travel Time, in which, the pre[-] and post[-]development overland flow lengths did not appear to match the Time of Concentration line depicted on the plans. Upon reevaluation of these values in accordance with PennDOT's Design Manual 2 Chapter 10, BRINJAC found that the post[-]development storm flows increased approximately 0.75 to 1 cubic foot per second per design year. The existing pipe network onsite has the capacity to convey this increase in flow.

Exhibit "D" attached to Appellant's "Petition to Strike and Open Judgment of Non Pros," 11/13/05; Record No. 19 (emphasis added).[3] We read the preceding excerpt, which is exemplary of the content of the Brinjac Engineering Report, to contain topics "beyond the realm of common knowledge and experience" that would re-

quire expert testimony to explicate. Consequently, the substance of Appellant's claims against Appellee ring true as professional engineering malpractice causes of action. As a result, Appellant was required to provide a certificate of merit with regard to those claims. Appellant's failure to do so resulted in the entry of a judgment of *non pros* consistent with Rule 1042.6.

¶ 11 Appellant also asserts that it "should be excused from filing a certificate of merit even if this Court finds that a certificate is now necessary when a claim is brought against an unlicensed engineering corporation, as both the licensing law and the case law at the time that Appellant filed its claim clearly provided the impression that a certificate of merit [wa]s not necessary." *See* Appellant's brief, at 14, which (*citing Whitsel v. Commonwealth of Pennsylvania Dept. of Trans., et al.*, 75 Pa.D. & C.4th 449 (2005) for such a proposition).

¶ 12 In *Whitsel*, the plaintiff filed a petition to open and strike a judgment of *non pros* on grounds that, *inter alia*, Rule 1042.3 **Certificate of Merit** applied only to an action against "a licensed professional." Given the fact that the defendant was an unlicensed corporation, the plaintiff contended that it was excused from filing a certificate of merit. The trial court agreed that Rule 1042.1 **Professional Liability Actions. Scope. Definitions** related only to actions against licensed persons and not to unlicensed corporations, but it did so with the caveat that until "a definitive appellate opinion" was issued on the subject its position would remain the same. *Whitsel,* 75 Pa.D. & C.4th at 453.

---

**3.** Reading Brinjac's report as a whole, we would hardly characterize it as a scathing, professional condemnation of Appellee's engineering design sufficient to qualify as "a written statement that there exists a reasonable probability that the care, skill or knowledge

exercised or exhibited in the [...] work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm [...]." Pa.R.C.P. 1042.3(a)(1).

¶ 13 Notwithstanding the fact that *Whitsel* is not binding upon this Court, *see Turner v. May Corp.*, 285 Pa.Super. 241, 427 A.2d 203, 208 n. 7 (1981), its holding is incongruent with current authoritative case law involving the filing of a certificate of merit involving professionals. *See, e.g., Varner, supra* (where defendant was an architectural firm who built townhouse that caught fire and injured occupants/plaintiffs, a certificate of merit was required to be filed under Rule 1042.3, which applied to professional liability claims against architectural firm). As re-cited earlier, we extend the logic of *Varner, supra,* to encompass the filing of a certificate of merit involving engineers.

¶ 14 Accordingly, absent Appellant's submission of a certificate of merit pursuant to Rules 1042.1, 1042.3(a), we affirm the order denying Appellant's "Petition to Strike/Open Judgment of Non Pros." [4]

¶ 15 Order affirmed.

4. Indeed, it would appear that Appellant anticipated the need for expert testimony. For example, prior to filing the complaint on March 9, 2006, Appellant enlisted the services of Brinjac Engineering, Inc. to complete an *engineering review* of Appellee's storm water management plan and civil design. Brinjac's report was completed on September 14, 2005, but stated that Appellee's storm water management plan was "thorough in scope and of sound engineering methods." *See* Exhibit "D" attached to Appellant's "Petition to Strike and Open Judgment of Non Pros," 11/13/05; Record No. 19. This may have been the reason for Appellant pursuing the course it did by averring that Appellee was guilty of ordinary negligence instead of professional malpractice in its pleadings. **See** Appellant's Complaint, 3/9/06, Count I (**NEGLIGENT DESIGN**), at ¶ 40 ("[Appellee] Keller agreed to provide professional engineering services to [Appellant]."); at ¶ 41 ("As a provider of professional engineering services, [Appellee] Keller owed a duty to [Appellant] to use the degree of knowledge, skill, and judgment ordinarily possessed and used by the average engineer in the profession."); at ¶ 42 ("[Appellee] Keller has breached its duty of care by providing engineering services in a negligent manner. [...] WHEREFORE, [Appellant] respectfully requests that this Court find that [Appellee] Keller was negligent in its design of the Property's storm water management system [...].").  The *form* utilized by Appellant to articulate its causes of action against Appellee is of no moment. Rather, this Court reads the *substance* of Appellant's complaint to assert professional malpractice not discernible by a trier-of-fact without professional elucidation, which, in turn, triggered application of Pa.R.C.P. 1042.3; *Varner, supra; see also* Appellant's Answer to New Matter, 9/12/06, at ¶ 64 ("The services [by Appellee] were not in accordance with appropriate standards of care and did not conform to recognized standard[s] and practices.").